## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KAREN ZUCHOWSKI, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

SFC GLOBAL SUPPLY CHAIN, INC.,

Defendant.

Case No. _____

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Karen Zuchowski (hereinafter, "Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, alleges the following based upon personal knowledge as to herself and her own actions, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased SFC Global Supply Chain, Inc.'s ("Defendant") "Red Baron" brand Brick Oven Cheese Trio Pizza, Classic Crust Four Cheese Pizza; and Thin & Crispy Five Cheese Pizza (hereinafter, the "Pizzas").

2.      This case arises out of Defendants' deceptive, unfair, and false merchandising practices regarding the Pizzas.

3.      On the label of the Pizzas, Defendant prominently represents that the Pizzas have a "PRESEVATIVE FREE CRUST" and contain "NO ARTIFICIAL FLAVORS" which leads consumers to believe that the Pizzas do not contain any preservatives in the crust nor artificial flavors generally.

4.      The Pizzas, however, contain Sodium Stearoyl Lactylate, Enzymes, and Mono- and Diglycerides (the "Preservatives"). Sodium Stearoyl Lactylate and Enzymes work in combination as an anti-staling agent in breads to preserve the softness of the crust during the products shelf life. Mono- and Diglycerides works as an anti-staling agent in baked goods by slowing the retrogradation of starch during the product's shelf life.

5.      The Pizzas contain the Preservatives in direct contravention to their labels express representation that the Pizzas have a "PRESERVATIVE FREE CRUST."

6.      The Pizzas also contain Modified Food Starch and Hydrolyzed Soy and Corn Protein, all of which are commercially manufactured and highly processed, and which contain monosodium glutamate (or "MSG") as a byproduct of the protein processing. The only purpose for including these synthetic food additives in the Pizzas is to create an MSG-like flavor in the pizza sauce (the "Synthetic Flavor").

7.      The Pizzas contain the Synthetic Flavor in direct contravention to their label's express representation that the Pizzas have "NO ARTIFICIAL FLAVORS."

8.      Plaintiffs and reasonable consumers reasonably believe, define, and assume that Pizzas labeled as having a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" do not contain any preservatives in the crust nor synthetic flavors in general.

9.      Because the Pizzas contain the Preservatives and the Synthetic Flavor, the representation that the Pizzas have a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" is unfair, false, deceptive, and misleading.

10.     Defendant manufactures, sells, and distributes these Pizzas via marketing and advertising that emphasizes that these Pizzas have a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS," a claim that appeals to health-conscious consumers.

11.     Unbeknown to Plaintiff and members of the Classes at the time of their purchase, and

2

contrary to the express representations on the labels, Defendant's advertising and marketing campaign is false, fraudulent, deceptive, and misleading.

12.     As a result of Defendant's unlawful and highly deceptive conduct, Plaintiff and Members of the Classes have been and continue to be harmed by purchasing a product under false pretenses.

13.     Plaintiffs and the Class thus bring claims for consumer fraud, breach of warranty common law fraud, and unjust enrichment and seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## **PARTIES**

14.     Plaintiff Karen Zuchowski is a citizen of the State of New York residing in the City of New York, and is a member of the Class defined herein. Her current residence is The Bronx, New York. She purchased the Pizzas for her own consumption many times preceding the filing of this Complaint. She most recently made a purchase in September 2020 at a Western Beef in the Bronx. Plaintiff and members of the Classes suffered an injury in fact caused by the false, fraudulent, deceptive, and misleading practices of Defendant set forth in this Complaint. Plaintiff and members of the Classes would not have purchased the Products had they been accurately labeled.

15.     Defendant, SFC Global Supply Chain, Inc., is a Minnesota corporation with its principal place of business in Marshall, Minnesota. Defendant manufactures, markets, distributes, and advertises the Products throughout the United States. Defendant developed and/or authorized the false, fraudulent, misleading, and deceptive advertisements and labeling of the Pizzas from its Minnesota headquarters.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act

of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims

of the proposed Class members exceed $5,000,000 and because Defendant is a citizen of a different

state than most Class members.

17.     The Court has personal jurisdiction over Defendant because it regularly conducts

business in this District, and/or under the stream of commerce doctrine by causing its products to

be disseminated in this District.

18.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts

substantial business in this District.

## FACTUAL ALLEGATIONS

### *A "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVOR" Representation is Material to Consumers*

19.     The use of the terms such as a "PRESERVATIVE FREE CRUST" and "NO

ARTIFICIAL FLAVORS" are powerful statements that are important to consumers.

20.     A study conducted by the marketing research firm Mintel in 2015 found that "foods

bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products

as closely tied to health."[1]

21.     In fact, 84% of Americans purchase foods labeled as "free-from" because they are

looking for more natural or less-processed food options.[2]

22.     According to one study, 45% of consumers believe that a product having fewer or

no synthetic ingredients, such as preservatives or artificial flavors, makes the product natural or

---

[1] Mintel Press Team, *84% of Americans Buy "Free-From" Foods Because They Believe Them to Be More Natural or Less Processed*, Mintel (Sept. 3, 2015) https://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed
[2] *Id.*

4

healthier.[3]

23.    The shift in consumers actively looking for more natural products is associated with consumer preferences regarding health.[4]

24.    A 2018 food and beverage survey by L.E.K. Consulting found that 69% of consumers are committed to purchasing products with no artificial ingredients and that 67% of consumers are committed to purchasing food products that lack preservatives.[5]

25.    Approximately 41% of global consumers believe that the absence of artificial flavors is "very important[.]"[6]

26.    According to Nielsen's 2015 Health and Wellness Survey, 88% of American consumers are willing to pay a premium for healthier foods.[7]

27.    Reflecting this trend, in 2011, the healthy food products industry was valued at approximately $91 billion.[8]

28.    Merely four years later the healthy food products industry had almost doubled in value to $180 billion.[9]

29.    Thus, seeking to capitalize on the booming healthy food products industry, Defendant marketed, advertised and labeled the Pizzas as having a "PRESERVATIVE FREE

---

[3] Will Cowling, *Consumers Continue to Seek Products with Natural Ingredients*, Candy Industry (Jan. 22, 2020), https://www.candyindustry.com/articles/88953-consumers-continue-to-seek-products-with-natural-ingredients#:~:text=The%20research%20found%2036,of%20artificial%20and%20synthetic%20ingredients.&text=Nearly%20three%2Dquarters%20(73%20percent,groceries%20are%20100%20percent%20natural.
[4] *Id.*
[5] Manny Picciola, *et al.*, *Consumer Health Claims 3.0L The Next Generation of Mindful Food Consumption*, L.E.K. Consulting (Oct. 15, 2018), https://www.lek.com/insights/ei/next-generation-mindful-food-consumption
[6] *We Are What We Eat – Healthy Eating Trends Around The World*, Nielsen (Jan. 2015), https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/january-2015-global-health-and-wellness-report.pdf
[7] Nancy Gagliardi, Consumers Want Heathy Foods—And Will Pay More For Them, Forbes, (Feb. 18, 2015) https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/?sh=51ba13e75c55
[8] Nancy Wagner, *Size of the Natural Products Industry*, Chron, https://smallbusiness.chron.com/size-natural-products-industry-71266.html (last visited Nov. 19, 2020).
[9] Natural Products Industry Sales up 9.5% to $180bn Says NBJ, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6

CRUST" and "NO ARTIFICIAL FLAVORS."

**Defendants' Representations that the Pizzas have "PRESERVATIVE FREE CRUST" and Contain "NO ARTIFICIAL FLAVOR" Are False and Misleading**

30.     As shown below, Defendant prominently labels the Pizzas as having a

"PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS[.]"







31.     Defendant directs the "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" representations to consumers, like Plaintiff and the members of the Class, and Defendant intends that Plaintiff and members of the Class read and rely on its representations.

32.     However, contrary to the representations made through marketing and on each package of the pizza, the Pizzas actually contain Sodium Stearoyl Lactylate, Enzymes, and Mono- and Diglycerides; as well as Modified Food Starch and Hydrolyzed Soy and Corn Protein, which means the Pizzas do not contain a "PRESERVATIVE FREE CRUST" or have "NO ARTIFICIAL FLAVORS[.]"

33.     The term "chemical preservative" means "any chemical that when added to food tends to prevent or retard deterioration, but does not include common salt, sugars, vinegars, [or] spices[.]" 21 C.F.R. § 101.22(a)(5).

34.     The term "artificial flavor" or "artificial flavoring" means "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material… ." 21 C.F.R. § 101.22(a)(1).

35.     In the food industry, an emulsifier is defined as a chemical additive that acts as a stabilizer, artificially improving the appearance, consistency, and most importantly extending the shelf life of the food product.[10]

36.     Based on their definitions, both preservatives and emulsifiers achieve the same result and are very alike as they each work to prevent the deterioration of the food and extend its shelf-life and timeframe for safe and healthy consumption.

37.     According to U.S. regulations, food that contains chemical preservatives must "bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention[.]" 21 C.F.R. § 101.22(j).

38.     The Food, Drug, and Cosmetics Act (FDCA) states that "A food shall be deemed to be misbranded – if its labeling is false or misleading in any particular" manner. 21 U.S.C § 343 (a)(1). Further, the Act provides that a food is misbranded by its label being false or misleading "If it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact… ." 21 U.S.C § 343 (k).

39.     The Food and Drug Administration (FDA) classifies Sodium Stearoyl Lactylate, Enzymes, Mono- and Diglycerides, Modified Food Starch (food starch – modified), and Hydrolyzed Soy and Corn Protein (Hydrolyzed vegetable protein) each as a chemical  food

---

[10] *Emulsifier*, Encyclopedia Britannica (March 20, 2019), https://www.britannica.com/science/emulsifier

additive that is permissible for consumption.[11]

40.    Sodium Stearoyl Lactylate, a preservative and chemical additive, is "a mixture of sodium salts of stearoyl lactylic acids and minor proportions of sodium salts of related acids [and] is manufactured by the reaction of stearic acid and lactic acid and conversion to sodium salts." 21 C.F.R. § 172.846(a).

41.    Sodium Stearoyl Lactylate is a versatile preservative and additive that can be used for the following: 1) a dough strengthener or emulsifier; 2) an emulsifier, stabilizer, or texturizer in cheese or cheese product substitutes; and 3) an emulsifier, stabilizer, or texturizer in sauces. *See* 21 C.F.R. § 172.846(c)(1), (6), (7).

42.    Mono- and Diglycerides are

> A mixture of glyceryl mono- and diesters, and minor amounts of triesters, that are prepared from fats or oils or fat-forming acids that are derived from edible sources.[…They] are manufactured by the reaction of glycerin with fatty acids or the reaction of glycerin with triglycerides in the presence of an alkaline catalyst. The products are further purified to obtain a mixture of glycerides, free fatty acids, and free glycerin that contains at least 90 percent-by-weight glycerides.

21 C.F.R. § 184.1505(a).

43.    Per FDA regulations, Mono- and Diglycerides are multipurpose preservatives and can be utilized as a dough strengthener, emulsifier, flavoring agent, formulation aid, lubricant and release agent, stabilizer and thickener, texturizer, and surface-finishing agent. *Id*. at (c)(1).

44.    Modified Food Starch is an Artificial Flavor additive, it is created by chemically, enzymatically or physically altering a standard food starch by either "treatment with hydrochloric

---

[11] *Food Additive Status List*, FDA (Last Updated: Oct. 24, 2019), https://www.fda.gov/food/food-additives-petitions/food-additive-status-list#ftnS

acid or sulfuric acid or both" or "bleached by treatment" from various chemicals and/or enzymes. *See* 21 C.F.R. § 172.892.

45.     Modified Food Starch, which can act as a binder, thickener, stabilizer, emulsifier, or gelling agent; is physically and chemically different from the original starch prior to the modification process.[12] Modified Food Starch is created and used specifically due to its enhanced properties that make it a useful preservative or emulsifier.[13]

46.     Protein hydrolysates, such as Hydrolyzed Soy and Corn Protein, are known generally as Hydrolyzed Vegetable Proteins (HVP), an artificial flavor enhancer.

47.     To create HVP, the plant protein undergoes a chemical process that changes its original form. It is "produced by boiling foods such as soy, corn, or wheat in hydrochloric acid and then neutralizing the solution with sodium hydroxide. The acid breaks down the protein in vegetables into their component amino acids. One of the amino acids in the dark-coloured liquid that's left is glutamic acid. Consumers are more familiar with glutamic acid in the form of its sodium salt — monosodium glutamate, or MSG."[14]

48.     Food manufacturers use HVP to artificially intensify the flavor of a variety of food products, including sauces.[15]

49.     In particular, HVP is often used to restore and enhance the flavor of certain food products, which may have been lost during the freezing process.[16]

---

[12] James Han, *What Is Modified Food Starch (E1404-E1452): Types, Uses, and Is It Gluten Free?*, Food Additives, (Jan. 2, 2020) https://foodadditives.net/starch/modified-food-starch/
[13] *Id.*
[14] *Hydrolyzed Vegetable Protein: What It Is, Where It's Found*, Canadian Broadcasting Corp., (Mar. 8, 2010) https://www.cbc.ca/news/technology/hydrolyzed-vegetable-protein-what-it-is-where-it-s-found-1.944579#:~:text=Hydrolyzed%20vegetable%20protein%20(HVP)%20is,into%20their%20component%20amino%20acids.
[15] Gavin Van De Walle, *Hydrolyzed Vegetable Protein: Production Methods, Uses, and Market*, Prospector, (May 8, 2020) https://knowledge.ulprospector.com/10537/fb-hydrolyzed-vegetable-protein-production-methods-uses-and-market/
[16] *Id*.

50.     According to Congress, synthetic is defined as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources." 7 U.S.C. § 6502 (21).

51.     Each of these aforementioned ingredients are contained in the Pizzas.

52.     As such, Defendant knew or should have known that the "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" claims prominently featured on the front of the label of the Pizzas were not accurate and that the labeling, advertising and/or marketing was false and misleading.

53.     Nevertheless, Defendant falsely and misleadingly marketed, advertised, packaged and/or sold the Pizzas to the general public as having a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS[.]"

54.     The only conceivable purpose for falsely and deceptively making these claims about the Pizzas is to stimulate sales and enhance Defendant's profits based on the booming healthy food products industry.

55.     Consumers are particularly vulnerable to these kinds of false and deceptive labeling and marketing practices. Most consumers are unable to verify that products such as Defendant's Pizzas are accurately labeled.

56.     As set forth above, the decision to purchase a product that has a "PRESERVATIVE FREE CRUST" and contains "NO ARTIFICIAL FLAVORS" is material to consumers.

57.     The difference between the Pizzas promised and the Pizzas sold is significant.

58.     As set forth above, consumers willingly pay more for products that are labeled as having "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" such as Defendant's Pizzas.

59.   Because of Defendant's deceptive advertising practices, consumers were and continue to be fraudulently induced to purchase and pay a premium for the Pizzas.

### *Plaintiff Relied Upon the Pizzas' Label to Purchase the Pizzas*

60.   Plaintiff was herself a victim of Defendants' mislabeling of the Pizzas. On several occasions, she purchased the Pizzas, most recently in September 2020 at a Western Beef in the Bronx, New York.

61.   Prior to each purchase of the Pizzas, Plaintiff viewed the "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" representation prominently featured on the Pizza's label.

62.   Plaintiff chose to purchase the Pizzas over cheaper alternatives because the Product was prominently labeled and advertised as having "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS."

63.   Plaintiff purchased the Pizza believing they contained "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS."

64.   Plaintiff would not have purchased and consumed the Pizzas had she known they did not contain a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" and instead contained Preservatives and Synthetic Flavors.

65.   Plaintiff is in the same Class as all other consumers who purchased Defendant's Pizzas during the relevant time period. Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations with respect to the Pizzas. Plaintiff and Class Members would have purchased other frozen pizza products, if any at all, if they had not been deceived by the misleading and deceptive labeling and advertising of the Pizzas by Defendant.

### *Defendants' Marketing and Sale of the Pizzas Violates Federal Law*

66.   Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a),

prohibits "unfair or deceptive acts or practices in or affecting commerce."

67.      Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

68.      Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Pizzas are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c). Under these provisions, companies must have a reasonable basis for making objective product claims.

69.      As alleged herein, Defendant has represented the Pizzas as containing "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS." However, these representations are false, deceptive, and misleading as the Pizzas contain preservatives such as Sodium Stearoyl Lactylate, Enzymes, and Mono- and Diglycerides; as well as artificial flavoring ingredients Modified Food Starch and Hydrolyzed Soy and Corn Protein. The making of such misrepresentations by Defendant constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

## CLASS ACTION ALLEGATIONS

70.      Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

71.      Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained through discovery.  Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

**National Class:**  All persons within the United States who purchased the Pizzas

13

labeled as having a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" from SFC Global Supply Chain, Inc. for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

**Consumer Fraud Multi-State Class:**  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased the Pizzas labeled as having a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" from SFC Global Supply Chain, Inc. for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[17]

**New York Sub-Class:**  All persons in New York who purchased the Pizzas labeled as having a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" from SFC Global Supply Chain, Inc. for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "New York Sub-Class").

72.    Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, Defendant's officers, directors, and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

73.    Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

74.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as

---

[17] New York General Business Law Secs. 349 and 350 prohibit unfair, deceptive, and illegal business acts and practices on the part of entities conducting business with consumers within the State of New York.  The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201 *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A *et seq.*); Michigan (Mich. Comp. Laws § 445.901 *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010 *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, *et seq.*) and Wisconsin (WIS.  STAT. § 100.18, *et seq.*).

would be used to prove those elements in individual actions alleging the same claims.

75. Numerosity – Federal Rule of Civil Procedure 23(a)(1). The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

76. Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

    a. Whether the Pizzas contain "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS" as claimed on its label;

    b. Whether Defendant had a reasonable basis for claiming that Pizzas contain a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS";

    c. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Pizzas are deceptive;

    d. Whether Defendant's actions violate the state consumer fraud statutes invoked below;

    e. Whether Defendant's actions constitute common law fraud;

    f. Whether Plaintiff and the members of the Classes were damaged by Defendant's conduct;

    g. Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members;

    h. Whether Defendant breached express warranties to Plaintiff and Class Members;

15

i.   Whether Defendant breached implied warranties to Plaintiff and Class Members; and

j.   Whether Plaintiff and Class Members are entitled to injunctive relief.

77.   Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of herself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

78.   Typicality – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

79.   Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

80.   Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers,

16

substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

81.     Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

82.     Superiority – Federal Rule of Civil Procedure 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Classes could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I

### Violation of the State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

83.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

84.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

85.     Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

86.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to the following:

a.   Representing on their label that the Pizzas contain a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS," with no reasonable basis to do so and when, in fact, they are not; and

b.   Representing that the Pizzas confer a health benefit when, in fact, they do not and/or Defendant had no reasonable basis to believe they did have such a benefit.

87.     Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

18

88.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

89.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## Count II
## Violation of the New York Business Law §§ 349 & 350
## (On behalf of the New York Sub-Class)

90.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

91.     New York General Business Law §§349 & 350 prohibit unfair, deceptive, and illegal business acts and practices on the part of entities conducting business with consumers within the State of New York.  The GBL is to be liberally construed to effectuate its purposes.

92.     Defendant engaged in the following unfair and/or deceptive business practices in the conduct of trade or commerce:

   a.   Representing on their label that the Pizzas contain a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS", with no reasonable basis to do so and when, in fact, they are not; and

   b.   Representing that the Pizzas confer a healthy benefit when, in fact, they do not and/or Defendant had no reasonable basis to believe they did have such a benefit.

93.     Defendant's conduct in labeling, marketing, advertising, and/or selling the Pizzas constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

19

94.     Defendant intended that Plaintiff and each of the Members of the New York Sub-Class would rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

95.     Defendant knew or should have known that its representations of fact concerning the Pizzas are material and likely to mislead consumers.

96.     Defendant's practices, acts, and course of conduct in labeling, marketing, advertising and selling the Pizzas are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff, Members of the New York Sub-Class would not have purchased the Products and/or would not have paid the premium they did pay for the products if they had they been accurately labeled, marketed, advertised, and/or sold.

97.     Plaintiff and Members of the New York Sub-Class have been directly and proximately damaged by Defendant's actions.

98.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the New York Sub-Class have sustained damages in an amount to be proven at trial.

99.     In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## Count III

## Common Law Fraud

### (On behalf of the National Class and the New York Sub-Class)

100.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

101.     Plaintiff brings this claim against Defendant on behalf of herself and the other

Members of the National Class and the New York Sub-Class (the "Classes").

102.   Defendant made false statements and omissions of material facts, including, but not limited to Defendant's claim that the Pizzas have "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS."

103.   Defendant's false statements and omissions of material facts were made to Plaintiff and the members of the Classes at least each time that Plaintiff and the members of the Classes purchased the Pizzas.

104.   Defendant knew or should have known that these statements were false and that the omissions were material. In the alternative, Defendant made these false statements and/or omissions without having any reasonable basis to believe they were true.

105.   Defendant intended that its false statements and omissions of material facts would induce Plaintiff and each of the members of the Classes to purchase the Pizzas.

106.   Plaintiff and the members of the Classes relied on the false statements and omissions of material facts of Defendant.

107.   Plaintiff and members of the Classes would not have purchased the Products had they been accurately marketed, advertised, packaged and/or sold.

108.   Plaintiff and Members of the Classes have been directly and proximately damaged by Defendant's false statements and omissions of material facts.

109.   As a result of Defendant's false statements and omissions of material facts, Plaintiff and each of the Members of the Classes have sustained damages in an amount to be proven at trial.

110.   In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

**Count IV**

**Breach of Express Warranties**

**(On behalf of the National Class and the New York Sub-Class)**

111.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

112.    Plaintiff brings this claim against Defendant on behalf of herself, the National Class, and the New York Subclass (for purposes of this Count, the "Classes").

113.    Defendant made express warranties and representations regarding the Pizzas when it represented on their labels that the Pizzas contain a "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS."

114.    This labeling, marketing, and advertising, which existed on the labels of the Pizzas when they left Defendant's control and were made directly to consumers and end purchasers of the Pizzas, constitute express warranties and became part of the basis of the bargain between the parties and created a collective "express warranty" that the Pizzas would conform to Defendant's affirmations and promises.

115.    Defendant breached express warranties about the Pizzas and their qualities because Defendant's statements about the Pizzas were false and the product does not conform to Defendant's affirmations and promises described above.

116.    Plaintiff and the Members of the Classes would not have purchased the Pizzas had they known that they contained preservatives and artificial flavors.

117.    Defendant's conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted by the following state statutes:

Ala. Code § 7-2-313, et seq.; Alaska Stat. § 45.02.313, et seq.; Ariz. Rev. Stat. § 47-2313, et seq.; Ark. Code § 4-2-313, et seq.; Cal. Com. Code § 2313, et seq.; Colo. Rev. Stat. § 4-2-313, et seq.; Conn. Gen. Stat. § 42a-2-313, et seq.; 6 Del. C.

§ 2-313, et seq.; D.C. Code § 28:2-313, et seq.; Fla. Code § 672.313, et seq.; O.C.G.A. § 11-2-313, et seq.; Haw. Rev. Stat. § 490:2-313, et seq.; Idaho Code § 28-2-313, et seq.; 810 Ill. Comp. Stat. 5/2-313, et seq.; Ind. Code § 26-1-2-313, et seq.; Iowa Code § 554.2313, et seq.; Kan. Stat. § 84-2-313, et seq.; Ky. Rev. Stat. § 355.2-313, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-313, et seq.; Md. Code Ann., Com. Law § 2-313, et seq.; Mass. Code 106, § 2-313, et seq.; Mich. Comp. Laws 440.2313, et seq.; Minn. Stat. § 336.2-313, et seq.; Miss. Code § 75-2-313, et seq.; Mo. Rev. Stat. § 400.2-313, et seq.; Mont. Code § 30-2-313, et seq.; Neb. U.C.C. § 2-313, et seq.; Nev. Rev. Stat. § 104.2313, et seq.; N.H. Rev. Stat. § 382-A:2-313, et seq.; N.J. Stat. § 12A:2-313, et seq.; N.M. Stat. § 55-2-313, et seq.; N.Y. U.C.C. § 2-313, et seq.; N.C. Gen. Stat. § 25-2-313, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-313, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2313, et seq.; R.I. Gen. Laws § 6A-2-313, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 313, et seq.; V.T.C.A., Bus. & C. § 2.313, et seq.; Utah Code § 70A-2-313, et seq.; Vt. Stat. Tit. 9A, § 2-313, et seq.; Va. Code § 8.2-313, et seq.; Wash. Rev. Code § 62A.2-313, et seq.; W. Va. Code § 46-2-313, et seq.; Wis. Stat. § 402.313, et seq.; and Wyo. Stat. § 34.1-2-313, et seq.

118.    As a result of Defendant's breach of warranty, Plaintiff and each Member of the Classes has been damaged in an amount equal to the difference in value between the Pizzas containing preservatives and artificial flavors and the Pizzas containing no preservatives and artificial flavors and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

119.    On November 24, 2020, prior to filing suit, Plaintiff and Members of the Classes notified Defendant as to its breaches of warranty.

120.    Defendant never responded to the notice and appears to be continuing to sell the mislabeled Pizzas to the consuming public.

**Count V**

**Breach of Implied Warranties**

**(On behalf of the National Class and the New York Sub-Class)**

121.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

122.    Plaintiff brings this claim against Defendant on behalf of herself, the National Class, and the New York Subclass (for purposes of this Count, the "Classes").

123.    Defendant is in the business of manufacturing, supplying, marketing, advertising, warranting, and selling the Pizzas.  Defendant impliedly warranted to Plaintiff and Members of the Classes that the Pizzas were of a certain quality that conferred a health benefit, i.e. no preservatives in the crust and no artificial flavoring generally.

124.    The Pizzas were unfit for their ordinary use and were not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label, as warranted by Defendant, because they did not confer a health benefit due to the preservatives in the crust and artificial flavorings in the pizza generally.  Prior to purchase, Plaintiff and the Members of the Classes could not have really discovered that the Pizzas were not fit for its ordinary purpose and did not conform to the quality previously represented.

125.    Similarly, the Pizzas were unfit for their particular purpose.  At the time Plaintiff and Members of the Classes purchased the Pizzas, Defendant knew or should have known that Plaintiff and the Members of the Classes would purchase and consume the Pizzas because it is labeled and advertised as having "PRESERVATIVE FREE CRUST" and "NO ARTIFICIAL FLAVORS."  However, Defendant's Pizzas were not suitable for this purpose at the point of sale because the Pizzas contained preservatives and artificial flavors and did not confer any of these benefits.

126.    The Pizzas were unfit for their ordinary use and were not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label and were unfit for its particular purpose when they left Defendant's control.

127.    Plaintiff and Members of the Classes would not have purchased the Pizzas if they

knew that they contained preservatives and artificial flavors.

128.    Accordingly, Plaintiff and the Members of the Classes did not receive the benefit of their bargain in purchasing the Pizzas.

129.    Defendant's conduct described in this Complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted by the following state statutes:

> Ala. Code § 7-2-314, et seq.; Alaska Stat. § 45.02.314, et seq.; Ariz. Rev. Stat. § 47-2314, et seq.; Ark. Code § 4-2-314, et seq.; Cal. Com. Code § 2314, et seq.; Colo. Rev. Stat. § 4-2-314, et seq.; Conn. Gen. Stat. § 42a-2-314, et seq.; 6 Del. C. § 2-314, et seq.; D.C. Code § 28:2-314, et seq.; Fla. Code § 672.314, et seq.; O.C.G.A. § 11-2-314, et seq.; Haw. Rev. Stat. § 490:2-314, et seq.; Idaho Code § 28-2-314, et seq.; 810 Ill. Comp. Stat. 5/2-314, et seq.; Ind. Code § 26-1-2-314, et seq.; Iowa Code § 554.2314, et seq.; Kan. Stat. § 84-2-314, et seq.; Ky. Rev. Stat. § 355.2-314, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-314, et seq.; Md. Code Ann., Com. Law § 2-314, et seq.; Mass. Code 106, § 2-314, et seq.; Mich. Comp. Laws 440.2314, et seq.; Minn. Stat. § 336.2-314, et seq.; Miss. Code § 75-2-314, et seq.; Mo. Rev. Stat. § 400.2-314, et seq.; Mont. Code § 30-2-314, et seq.; Neb. U.C.C. § 2-314, et seq.; Nev. Rev. Stat. § 104.2314, et seq.; N.H. Rev. Stat. § 382-A:2-314, et seq.; N.J. Stat. § 12A:2-314, et seq.; N.M. Stat. § 55-2-314, et seq.; N.Y. U.C.C. § 2-314, et seq.; N.C. Gen. Stat. § 25-2-314, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-314, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2314, et seq.; R.I. Gen. Laws § 6A-2-314, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 314, et seq.; V.T.C.A., Bus. & C. § 2.314, et seq.; Utah Code § 70A-2-314, et seq.; Vt. Stat. Tit. 9A, § 2-314, et seq.; Va. Code § 8.2-314, et seq.; Wash. Rev. Code § 62A.2-314, et seq.; W. Va. Code § 46-2-314, et seq.; Wis. Stat. § 402.314, et seq.; and Wyo. Stat. § 34.1-2-314, et seq.

130.    As a result of Defendant's breach of warranty, Plaintiff and each Member of the Classes has been damaged in an amount equal to the difference in value between the Pizzas containing preservatives and artificial flavors and the Pizzas containing no preservatives and artificial flavors and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

131.    On November 24, 2020, prior to filing suit, Plaintiff and Members of the Classes notified Defendant as to its breaches of warranty.

132.    Defendant never responded to the notice and appears to be continuing to sell the mislabeled Pizzas to the consuming public.

**Count VI**

**Unjust Enrichment**

**(On Behalf of the National Class and the New York Sub-Class)**

133.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

134.    Plaintiff brings this claim against Defendant on behalf of herself and the National Class and the New York Sub-Class (the "Classes").

135.    Plaintiff and the other Members of the Classes conferred benefits on Defendant by purchasing the Pizzas.

136.    Defendant received the benefits to the detriment of Plaintiff and the other Members of the Classes because Plaintiff and the other Members of the Classes purchased a mislabeled product that is not what they bargained for and that did not provide any of the promised health benefits.

137.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Pizzas by Plaintiff and the other Members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling, marketing and advertising of the Pizzas was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Classes, because they would have not purchased the product otherwise.

138.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Classes for its unjust enrichment, as ordered

by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

1.  For Count I: Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

2.  For Count II: Declaring that this action is a proper class action, certifying the New York Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

3.  For Count III: Declaring that this action is a proper class action, certifying the Classes as requested in Count III, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

4.  For Count IV: Declaring that this action is a proper class action, certifying the Classes as requested in Count IV, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

5.  For Count V: Declaring that this action is a proper class action, certifying the Classes as requested in Count V, designating Plaintiff as Class

Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

6.      For Count VI: Declaring that this action is a proper class action, certifying the Classes as requested in Count VI, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

7.      Enjoining Defendant from engaging in the unlawful conduct set forth herein;

8.      Ordering Defendant to pay damages to Plaintiff and the other Members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages

9.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Class;

10.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

11.     Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

12.     Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: December 3, 2020                    Respectfully Submitted,

*/s/ Jonathan Shub*
Jonathan Shub, Esq.
Kevin Laukaitis, Esq.*
**SHUB LAW FIRM LLC**
134 Kings Highway East, 2nd Floor
Haddonfield, NJ 08033
Phone: 856-772-7200
Fax: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

Gary E. Mason*
David K. Lietz*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com

*Pro Hac Vice forthcoming*

*Attorneys for Plaintiff and the Class*